IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> DUANNE PIERCE | CRIMINAL NO. 22-79-01 |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                       **April 21, 2025**

Before the Court is a *pro se* motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A) by Defendant Duanne Pierce, a 61-year-old inmate incarcerated at Schuylkill Federal Correctional Institution ("Schuylkill FCI").[1]

**I.    BACKGROUND**

On March 28, 2023, Mr. Pierce pled guilty to one count of conspiracy and nine counts of interstate transportation of solen goods, in violation of 18 U.S.C. § 2314.[2] These charges stemmed from Mr. Pierce's orchestration of a multi-state jewelry theft ring that stole jewelry valued at a total of more than $600,000 from retail jewelry stores located around the country over a two-year period.[3]

---

[1] Def.'s Mot. Compassionate Release [Doc. No. 306].

[2] Crim. J. [Doc. No. 263].

[3] Gov't Resp. Opp'n Compassionate Release at 1-2 [Doc. No. 311]. The government highlights that Mr. Pierce was the ringleader of the theft ring, recruiting his seven co-defendants, planning and coordinating the thefts, overseeing the resale of the stolen jewelry, and keeping the largest share of the proceeds. *Id.* at 2.

On July 26, 2023, pursuant to Mr. Pierce's plea agreement with the government, this Court imposed a sentence of 77 months' imprisonment and three years of supervised release.[4] This sentence was on the low end of the Sentencing Guidelines range of 77 to 96 months.[5] Mr. Pierce has now served approximately 51 months of the 77-month term of imprisonment.[6] His minimum release date, with good time credit, is May 17, 2026.[7]

## II.  LEGAL STANDARD

When evaluating the merits of a compassionate release motion, this Court generally "may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35."[8] Section 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, is one such statute that authorizes modifications to a sentence previously imposed. It grants prisoners "the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf."[9] Once a defendant has satisfied the exhaustion requirement, the sentencing court may reduce his or her sentence "if it finds that extraordinary and compelling reasons warrant such a reduction."[10] While Mr. Pierce filed his motion before making a formal request to the warden for support for compassionate release, 30 days have now passed since the submission of

---

[4] *See* Crim. J. [Doc. No. 263].

[5] Gov't Resp. Opp'n Compassionate Release at 2 [Doc. No. 311].

[6] *Id.* at 3 (estimating 41 months as of June 28, 2024).

[7] *Id.*

[8] *United States v. Van Sickle*, No. 18-250, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (citing *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003)).

[9] *United States v. Hill*, No. 19-38, 2020 WL 2542725, at *1 (D. Conn. May 19, 2020) (citing *United States v. Almontes*, No. 05-58, 2020 WL 1812713, at *1 (D. Conn. Apr. 9, 2020)). "The exhaustion requirement is met if the defendant establishes either (1) that the Bureau of Prisons denied his or her request that it bring a compassionate-release motion and he or she fully exhausted all administrative appeal rights with respect to that denial, or (2) that the warden of the facility took no action on his or her request . . . within 30 days of receiving it." *United States v. Cassidy*, No. 17-116, 2020 WL 1969303, at *2 (W.D.N.Y. Apr. 24, 2020) (citing 18 U.S.C. § 3582 (c)(1)(A)).

[10] *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)) (cleaned up).

that request and thus exhaustion is now satisfied here.[11]

Even if extraordinary and compelling reasons exist, the "district court must 'consider the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable.'"[12] Further, "all sentence reductions must be 'consistent with applicable policy statements issued by the Sentencing Commission . . . .'"[13] In other words, a court may grant a defendant's motion if (1) "extraordinary and compelling reasons" exist, (2) a reduction aligns with relevant Sentencing Commission policy statements, and (3) the § 3553(a) factors support a reduction.[14]

### III. DISCUSSION

#### a. Mr. Pierce's medical conditions do not present extraordinary and compelling reasons meriting release.

Mr. Pierce argues that his diabetes (which resulted in amputation of a toe on his left foot), atrial fibrillation, and high blood pressure require care he does not receive at Schuylkill FCI, which has no on-site doctor.[15] Mr. Pierce also contends that he has little ability to exercise given "lockdowns" at Schuylkill FCI, no control over his diet, and that all of these factors, considered in combination with the fact that he is a non-violent offender over 60 years old, favor his release.[16] The guideline policy statement on compassionate release for medical conditions provides that "extraordinary and compelling reasons" for release exist where:

(1) Medical Circumstances of the Defendant.—
    a. The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time

---

[11] Gov't Resp. Opp'n Compassionate Release at 3 [Doc. No. 311]. Mr. Pierce submitted this motion to the Court on May 29, 2024, and did not make his request to the warden until June 3, 2024.

[12] *Pawlowski*, 967 F.3d at 329 (quoting 18 U.S.C. § 3582(c)(1)(A)) (alterations omitted).

[13] *United States v. Andrews*, 12 F.4th 255, 259 n.4 (3d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

[14] *Id.* at 258 (quoting 18 U.S.C. § 3582(c)(1)(A)).

[15] Def.'s Mot. Compassionate Release at 1 [Doc. No. 306].

[16] *Id.*

      period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  b. The defendant is—

      i. Suffering from a serious physical or medical condition,

      ii. Suffering from a serious functional or cognitive impairment, or

      iii. Experiencing deteriorating physical or mental health because of the aging process,

  That substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility from which he or she is not expected to recover.

  c. The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

  d. The defendant presents the following circumstances—

      i. The defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

      ii. Due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

      iii. Such risk cannot be adequately mitigated in a timely manner.

(2) Age of the Defendant.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.[17]

Mr. Pierce argues that his medical conditions are uncontrolled in prison and grounds for his release. His medical records reveal that complications with his type 2 diabetes led to the full amputation of his left big toe on March 28, 2024.[18] Following the amputation, Mr. Pierce

---

[17] U.S.S.G. Section 1B1.13(b).

[18] Mr. Pierce's medical records from the Bureau of Prisons were filed under seal in connection with the government's opposition to his motion for compassionate release. *See* Doc. No. 312.

received wound care every few days and had regular follow-up appointments until the wound site was healed. Mr. Pierce has received diabetic shoes and inserts, along with a toe filler, to address remaining concerns.

While undoubtedly serious, Mr. Pierce's medical conditions do not rise to the level of an "extraordinary and compelling reason" allowing for consideration of compassionate release. Mr. Pierce is recovering from his left toe amputation procedure and his conditions are managed in BOP custody;[19] he does not present a terminal illness; he has not demonstrated that he is unable to provide self-care in the institution; and he has not shown that he is at imminent or increased risk of exposure to infectious diseases.

Courts often find that situations like Mr. Pierce's—involving amputations caused by uncontrolled diabetes—do not merit compassionate release.[20] Moreover, Mr. Pierce has not established that he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."[21] Mr. Pierce received wound care multiple times a week for more than a month following his amputation, has been regularly transported off-site for medical appointments and podiatric care, and has been provided with multiple prescriptions to address his medical needs.

Next, while Mr. Pierce cites his age, 61, as an additional basis for release, he does not

---

[19] "Diagnoses for chronic conditions, which are treatable by the BOP, such as diabetes, hyperlipidemia, and hypertension, do not establish extraordinary and compelling reasons that merit compassionate release." *United States v. Gomez-Moreira*, 2024 WL 245640, at *3 (E.D. Cal. Jan. 23, 2024).

[20] *See, e.g.*, *United States v. Hannigan*, 2021 WL 1599707, at *6 (E.D. Pa. Apr. 22, 2021); *United States v. Caldwell*, 2022 WL 3716034, at *2, *3 (C.D. Ill. Aug. 29, 2022) ("Noticeably absence from Defendant's medical records was any indication that he was unable to care for himself within the environment of the correctional facility, or that he was not continuing to recover from his amputation."); *United States v. Ware*, 2021 WL 5811244, at *5 (N.D. Tex. Dec. 6, 2021).

[21] U.S.S.G. Section 1B1.13(b)(1)(C).

satisfy the requirements for age-based release set forth in the Sentencing Guidelines.[22] Mr. Pierce is not 65 years old (as required by subsection (A)), nor has he served 75% of his 77-month sentence (as required by subsection (C)). Thus, he cannot not meet the requirements in the conjunctive test for determining when a defendant's age can present an extraordinary and compelling reason meriting release.

Nor are Mr. Pierce's other arguments grounds for release. Mr. Pierce argues that he has had limited control over his diet and exercise. To the extent that this is relevant to the maintenance of his diabetes and other medical conditions, it is addressed above. Any further objections to the quality of his care must first go through the Bureau of Prison's administrative remedy process.[23] Next, Mr. Pierce argues that the amount of First Step Act credits he has earned for rehabilitative programming has been restricted. This is not a basis for compassionate release.[24]

### b. The section 3353(a) sentencing factors weigh against Mr. Pierce's release.

Even if Mr. Pierce had presented extraordinary and compelling reasons, the compassionate release analysis would not end there. District courts must also consider whether a defendant poses a danger to the community[25] and whether the factors set forth in § 3553(a), to

---

[22] U.S.S.G. Section 1B1.13(b)(2).

[23] 42 U.S.C. § 1997e(a); *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

[24] *See, e.g.*, *United States v. Eggleston*, 2023 WL 8716876, at *4 (D. Md. Dec. 18, 2023) (holding that an assumption about potential time credit is not a basis for compassionate release); *United States v. Kaneko*, 2024 WL 1018362, at *4 (D. Haw. Mar. 8, 2024) (explaining that a challenge to assessment of First Step Act credits should be brought under § 2241, not in a motion for compassionate release).

[25] The Sentencing Commission's policy statement, by referring to § 3142(g), instructs the Court to "weigh [the defendant's] danger to the community includ[ing] 'the nature and circumstances of the offense charged,' 'the history and characteristics of the person,' including 'the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history,' and 'the nature and seriousness of the danger to any person or the community that would be posed by the person's release.'" *United States v. Rodriguez*, 451 F. Supp. 3d 392, 406 (E.D. Pa. 2020) (quoting 18 U.S.C. § 3142(g)).

the extent that they are applicable, favor a sentence reduction.[26] Mr. Pierce notes that he was convicted of non-violent offenses and has taken advantage of many educational courses while incarcerated;[27] according to the government, he has one disciplinary infraction, for mail abuse, in October 2022.[28] The Court commends Mr. Pierce's efforts to rehabilitate himself. However, upon careful review, the circumstances of his offenses and the § 3553(a) sentencing factors weigh against release.

While Mr. Pierce's prior convictions are predominantly non-violent, he poses a substantial risk of recidivism. At sentencing, Mr. Pierce was in Criminal History Category VI, the highest category, having amassed 27 adult criminal convictions since the 1980s.[29] Most of those convictions arose from theft crimes.[30] Prior to this case, Mr. Pierce was sentenced to six-and-a-half years in federal prison at age 40 for crimes virtually identical to those he committed here, when he was in his late 50s. Notwithstanding his age and medical conditions, Mr. Pierce remains physically capable of committing the same sort of jewelry theft he has carried out many times.

In considering the Section 3553(a)(2) factor, the sentence must be sufficient, but not greater than necessary, to serve the purposes of "just punishment, deterrence, protection of the public, and rehabilitation."[31] Mr. Pierce's crimes were serious—he was the ringleader of a criminal organization involving seven other participants, some of whom are still in prison, despite having been involved in fewer thefts—and his 77-month sentence was at the bottom the

---

[26] *Pawlowski*, 967 F.3d at 329 (citing 18 U.S.C. § 3582(c)(1)(A)).

[27] Def.'s Mot. Compassionate Release at 1 [Doc. No. 306].

[28] Gov't Resp. Opp'n Compassionate Release at 3 [Doc. No. 311].

[29] *Id.* at 2.

[30] *Id.*

[31] *Dean v. United States*, 581 U.S. 62, 67 (2017).

guideline range. Mr. Pierce's sentence reflects the seriousness of his crimes, promotes respect for the law, serves as just punishment, and demonstrates appropriate general and specific deterrence for future crimes. And as the most culpable member and the leader of the scheme, it is fair for Mr. Pierce to be the last defendant released from custody. The Court encourages Mr. Pierce to continue his commendable efforts to rehabilitate himself until his release, but it cannot conclude that his sentence is "not greater than necessary" at this time.

### IV.    CONCLUSION

For the reasons stated above, Mr. Pierce's *pro se* Motion for Reduction of Sentence will be denied without prejudice. An order will be entered.